# Sedgwick *versus* Lewis.

1. Pollock, a partner in a grocery, forwarding and commission firm, bought lumber on his own account, and gave a note signed in the firm name; the payees endorsed to Lewis, who received it without notice that it was not given in the business of the firm. *Held*, that Lewis could recover against the firm.

2. Signing the note by Pollock in the firm name was a fraud on the firm; had Lewis taken it with knowledge, it would have been a good defence for the firm.

3. Ihmsen *v.* Negley, 1 Casey 297, recognised.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county*: No. 158, to October and November Term 1871.

This suit was brought to April Term 1869, of the Common Pleas of Greene county, by Samuel Lewis against Joseph Sedgwick and Thomas P. Pollock, Jr.

[Sedgwick *v.* Lewis.]

It was an action of assumpsit on the following promissory note, the plaintiff being the endorsee and holder :—

"$2170.                          "Rice's Landing, May 19th 1868.

"Eight months after date we promise to pay to the order of Gillespie & Newcomb, Two Thousand One Hundred and Seventy Dollars, value received, payable at German National Bank of Pittsburg, Penna.

"Signed,       SEDGWICK & POLLOCK.
                      BRADEN, WALTON & CO.
"Endorsed,       Gillespie & Newcomb.
                      Samuel Lewis."

At the date of the note, before and for some time afterwards, Sedgwick & Pollock were engaged in the grocery and forwarding and commission business, at Rice's Landing, in Greene county. Braden, Walton & Co., the other drawers of the note, were partners in a planing-mill, buying and selling lumber, building, &c. Gillespie and Newcomb, the payees and endorsers, were lumbermen.

The defendant Sedgwick had given notice to the plaintiff that the firm had received no consideration for the note, and that he would be required to show the consideration he gave for it.

The foregoing facts were admitted on the trial, May 18th 1871, before Gilmore, P. J.; the plaintiff then gave the note in evidence and rested.

The defendants gave evidence of the purchase of several rafts of lumber by Braden, Walton & Co., and Pollock, from Gillespie & Newcomb, for which they gave three notes, that in suit being one, all signed alike and for similar amounts, the other two being payable in thirty days and four months respectively.

The signature "Sedgwick & Pollock" was written by Pollock; and when he signed the note he told the payees that he did not know whether Sedgwick would go into the note; Sedgwick afterwards declined to take an interest in the lumber.

Sedgwick testified that he never gave authority to any one to use his name; that Pollock bought stock, and sometimes he, Sedgwick, would take an interest and sometimes would not; he never gave Pollock authority to buy lumber for him; Sedgwick declined to take an interest in this lumber; the firm-business was confined to buying grain and the commission and forwarding business; Pollock had never signed the firm-name to any note but that in suit.

The defendant gave evidence also to show that the payees of the note had misrepresented the quality of the lumber, and had defrauded the purchasers in the sale.

The plaintiff in rebuttal showed that in the settlement of Gil-

[Sedgwick *v.* Lewis.]

lespie and Newcomb between themselves, the note in suit became Newcomb's individual property; Newcomb was indebted to Lewis, the plaintiff, and transferred the note to him; he received it in absolute payment of the debt. Lewis had no knowledge of what was the consideration of the note when he received it.

Sedgwick, who defended in this suit, submitted these points—both were refused:—

1. The endorsee of negotiable paper signed with the name of ʟ a firm, is bound to know that it was given for a partnership transaction, and within the scope of the partnership business, or that the member who signed it had authority from his copartner to do so.

2. If the jury believe that the purchase of this lumber by Pollock was not within the scope of the partnership business of Sedgwick & Pollock, as forwarding and commission merchants, and that he had no authority from Mr. Sedgwick to make the purchase or sign the name of the firm therefor, then the plaintiff cannot recover as to Joseph Sedgwick, one of the defendants, and the verdict must be for him.

Judge Gilmore, after recapitulating the evidence, charged:—

* * *. "If you believe the evidence, then the note in suit was negotiated to Lewis for a valuable consideration, and as far as we are informed from the evidence, without any notice of fraud, want of consideration or any complaint whatever. What is the effect of all this? We say to you, and so charge you, that if you find this note was endorsed before maturity to Lewis, the plaintiff, and that he upon receiving the endorsement paid valuable consideration for it, by taking it as an absolute payment *pro tanto* upon his mortgage, and had no notice previously to the endorsement of any want or failure of consideration in the note, he will be entitled to your verdict.

"Sedgwick, one of the defendants, says: Supposing all this to be true, the plaintiff is not entitled to recover against him.

"There is some contradictory evidence as to what was said when Pollock signed the firm name to the note as one of the drawers. We do not view this as material under what we hold to be the law governing the case. Sedgwick and Pollock were partners as retail grocers, or generally as grocers. With this they connected the buying of grain, and a general forwarding and commission business; from this it will be seen that their partnership business was somewhat miscellaneous. In addition to this, Mr. Pollock informs us that he sometimes bought stock, cattle and hogs, but always on his own individual account, and after the purchase would allow his partner to take an interest or not, as he was inclined to.

"In this lumber venture it appears he declined, first in a hesitating way, and a very short time after peremptorily. When the lumber was bought by Pollock, Sedgwick was not at home, and

[*Sedgwick v. Lewis.*]

when Pollock was about to sign the note with the firm, he says (and in this he is corroborated by others), that he expressed himself doubtful as to his right to sign the firm name. I understood Gillespie to say that he understood his doubt to be as to the contract and not as to the power to sign; and that he said he must have Sedgwick, as he understood him to be quite responsible. But there is no pretence that anything that was said there was communicated to Lewis before he took the note. Nor is there any evidence that Sedgwick took any occasion to warn the public against the negotiation of the note. But for the matter of that, we have no evidence that Sedgwick knew that his partner had made use of the firm-name, nothing except what might be inferred from the relations between him and Pollock, that the latter might or ought to have communicated the fact. We, however, charge you that what was said by Pollock at the signing of the note might have affected Gillespie and Newcomb; still, as we have no evidence that Lewis had any notice of the nature and limited character of the partnership between Sedgwick and Pollock, he will not be affected by it, and that as to him the signature of Sedgwick and Pollock made by Pollock, although the purchase of lumber was beyond the scope of the partnership, will be binding on Sedgwick. Such we understand as the settled law. If no partnership whatever had existed, the signature would have been simply forgery; but Pollock had authority to sign the name of the firm to various transactions, and if in this instance he transcended the power, the one who trusted him must bear the loss. It cannot be expected in every transaction and signature of firm names, every one who deals with them must go around and interrogate the several partners to ascertain whether their several assents have been given, or whether the transaction is strictly within the scope of the business of the organization." * * *

The verdict was for the plaintiff for $2473.50.

Sedgwick took out a writ of error, and assigned the refusal of his points for error.

*Black, Phelan* and *Crawford*, for plaintiff in error.—All dealing with a partnership are bound to know the nature of its business, and therefore the extent of the authority of its members: Tanner *v.* Hall, 1 Barr 419. A partner cannot bind the firm for his private debts without the assent of his partner; this is a question for the jury: Noble *v.* McClintock, 2 W. & S. 152; Baird *v.* Cochran, 4 S. & R. 397; assent is not to be presumed: McKinney *v.* Brights, 4 Harris 399. A contract with one partner for matter unconnected with the partnership business will not bind the firm: Collyer on Partnership 270; Story on Partnership, sects. 126, 127, 3 Kent's Com. 46; Livingston *v.* Roosevelt, 4 Johns. R. 251.

[Sedgwick *v.* Lewis.]

*Wyly* and *Buchanan.*—Partnership securities, although negotiated by the fraud of one partner, are binding in the hands of an innocent endorsee: Byles on Bills 127, 128; Austin *v.* Vandemark, 4 Hill 259. Note signed in the name of the firm is primâ facie for a partnership debt: Foster *v.* Andrews, 2 Penna. R. 160.

Judgment was entered in the Supreme Court November 23d 1871.

PER CURIAM.—The opinion of the learned judge below, given in his charge to the jury, is sustained by Ihmsen *v.* Negley, Mohan & Co., 1 Casey 297. Certainly if it had appeared that Lewis had notice in the case in hand, that the note signed in the name of the firm of "Sedgwick & Pollock" by Pollock was not in the business of the firm, it would have been a good defence against it in his hands; it would have been a fraud on the firm, but there was no such notice or knowledge shown.

Judgment affirmed.